ORIGINAL

Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON    #2948
841 Bishop Street, Suite 800
Davies Pacific Center
Honolulu, Hawaii 96813
Telephone Number:  523-7041
Facsimile Number: 538-7579
E-Mail: wharrison@hamlaw.net

Attorney for Defendant
PETER J. GADDY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 3 2006

at _6_ o'clock and _29_ min. _P_ M̄
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>  vs.<br><br>PETER J. GADDY,<br><br>              Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CR. NO. 03-00589 ACK<br><br>**DEFENDANT PETER GADDY'S SENTENCING STATEMENT; CERTIFICATE OF SERVICE**<br><br>Date:  February 13, 2006<br>Time:  1:30 p.m.<br>Judge: The Honorable Alan C. Kay |

### **DEFENDANT PETER GADDY'S SENTENCING STATEMENT**

COMES NOW Defendant PETER GADDY, by and through his attorneys above-named and hereby submits his Sentencing Statement which includes objections and clarifications to the Draft Presentence Investigation Report (DPIR).

# I.

## INTRODUCTION

PETER GADDY was charged in an eight count indictment with: "knowingly and willfully making and using a materially false writing" (counts 1 and 2 – Health benefits form); making a "false, fraudulent and fictitious" claim for payment of health care benefits (count 3 - Health benefits form); conversion (count 4 - health care benefits claims); making a "false, fraudulent and fictitious" claim for payment of transportation cost for household goods ( count 5); conversion (count 6 - payment of transportation cost for household goods);  making a "false, fraudulent and fictitious" claim (count 7 - payment of transportation cost for an automobile); conversion (count 8 - payment of transportation cost for an automobile).

The Jury acquitted GADDY of all charges relating to the household goods and automobile. The Jury also acquitted him of conversion relating to the health benefits.

# II.

## FACTUAL OBJECTIONS AND CLARIFICATIONS

**PART A. THE OFFENSE**

**The Offense Conduct**

**Paragraph 29:**

Mr. Gaddy submits that any reference to losses to the government

should be stricken from the PSR and the PSR sanitized. None of the stated amounts were proven beyond a reasonable doubt at trial as Defendant was acquitted of all conduct alleged in counts 4-8.

In *United States v. Watts*, 519 U.S. 148 (1997), the Supreme Court addressed whether, under the mandatory sentencing guideline regime, a sentencing judge could consider conduct of which the defendant had been acquitted at trial, using a preponderance of the evidence standard. There, the district court had found, "by a preponderance of the evidence," that the defendant had possessed guns in connection with the drug offense and added two points to his sentence, even though the jury had acquitted him of using a firearm in relation to a drug offense. *Id.* at 150. The Supreme Court found "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at 157. The viability of *Watts*, however, was questioned by Justice Stevens' constitutional majority opinion in *Booker*. While stating that *Watts* is not "inconsistent with today's decision," Justice Stevens remarked that *Watts* did not involve "any contention that the sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment. The issue we confront today simply was not presented." *Booker*, 125 S.Ct. at 754. Moreover, in a footnote, Justice Stevens continued: "*Watts*, in particular, presented a very narrow question regarding the Interaction of the

Guidelines with the Double Jeopardy clause, and did not even have the benefit of a full briefing or oral argument.  It is unsurprising that we failed to consider fully the issues presented to us in these cases." *Id.* at 754 no.4.  *See also United States v. Gray*, 362 F. Supp. 2d 714, 721 (S.D.W.Va. 2005) ("The reasoning in *Watts* . . . was drawn into serious question by the constitutional majority in *Booker*." *United States v. Pimental*, 367 F. Supp. 2d 143, 2005 WL 958245, at 6 (D. Mass. Apr. 21, 2005) (characterizing Justice Stevens' language as questioning *Watts'* underlying proposition).

In this case, the Government failed to prove conversion or making false claims (charged in Counts 4 through 8) by *either* a preponderance of the evidence or by proof beyond a reasonable doubt.  Thus, the offense level computations under U.S.S.G. § 2B1.1 (b) (1) (C) are not applicable pursuant to either standard of proof.  The prosecution attempted to prove to the jury that Defendant defrauded the Government and converted to his use Government funds by fraudulently shipping household goods and a car.  To the contrary, the evidence showed that Defendant owned the household goods and shipped a vehicle which he was legally entitled to ship.

Moreover, the FEHB premium payments complained of in count 4 of the indictment were rejected by the jury when it acquitted him of the count.

Finally the HMSA claims paid to service providers were neither

4

alleged nor proven by the government. Point in fact it was Lynn Flaming that benefited from the HMSA benefits not Peter.

Because the government proved neither fraud nor conversion by a preponderance of the evidence, the 4 offense levels suggested by § 2B1.1 (b) (1) (c) cannot be added to Defendant's sentence.

The underlying premises of *Booker* and its predecessors – *Jones, Apprendi, Ring, and Blakely* – detract from *Watts'* continued validity. These cases emphasize that a judge's determination at sentencing must be guided by the jury-authorized verdict. *Blakely v. Washington*, 542, U.S. 296, 124 S.Ct. 2531, 2537 (2004) (invalidating a state mandatory sentencing guideline system and holding that when a judge inflicts punishment that the jury's verdict alone does not authorize, "the jury has not found all the facts which the law makes essential to the punishment . . . and the judge exceeds his proper authority") (internal citations omitted); *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (holding unconstitutional a sentencing judge's finding of an aggravating circumstance necessary for imposition of the death penalty because it exposed Ring to a greater punishment than that authorized the guilty verdict); *Apprendi v. New Jersey*, 530 U.S. 466, 483, 490 (2000) (invalidating a state "hate crime enhancement" because it doubled the maximum jury-authorized sentence; holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

5

proved beyond a reasonable doubt"); *Jones v. United States*, 526 U.S. 227, 251-52 (1999) concluding  that a federal carjacking statute, which delineated imprisonment terms based on the extent of harm to the victim – fifteen years for no serious bodily injury, twenty five years for serious bodily injury and life if the victim died – required the government to prove the level of victim harm to the jury by proof beyond a reasonable doubt).  Likewise, the remedial opinion in *Booker* limits sentences to the *jury-authorized* statutory maximum, as defined by the United States Code.  *See e.g.*, *United States v. Duncan*, 400 F.3d 1297, 1303 (11th Cir. 2005) ("Justice Breyer's opinion making the Guidelines advisory essentially changes what sentence is authorized by a jury verdict – from the sentence that was authorized by mandatory Guidelines to the sentence that is authorized by the U.S. Code.").

A paradox is thus presented in these types of cases.  *Apprendi* and its progeny, including *Booker*, have elevated the role of the jury verdict by circumscribing a defendant's sentence to the relevant statutory maximum *authorized* by a jury; yet, the jury's verdict is not heeded when it specifically withholds authorization.  Stated differently, the jury is essentially ignored when it disagrees with the prosecution.  This outcome is nonsensical and in contravention of the thrust of recent Supreme Court jurisprudence.  The Fifth and Tenth Circuit Court of Appeals[1] have

---

[1] The Second Circuit implied the continuing validity of *Watts*, but did not directly hold as such.  *United States v. Williams*, 399 F.3d 450, 452-54 (2005).  There, the court rejected the defendant's argument that the district court judge erred by considering

attempted to reconcile this paradox, thereby upholding *Watts'* validity, by focusing solely on the narrow remedial holding of Justice Breyer's opinion. *See, e.g. Duncan*, 400 F.3d at 1304 ("*Booker* does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict."); *see also United States v. Magallanez*, 408 F.3d 672, 2005 WL 1155913, at 7-8 (10th Cir. May 17, 2005) (admitting that the defendant "might well be excused for thinking that there is something amiss, under this constitutional principle, with allowing the judge to determine facts on which to sentence him to an additional 43 months in prison in the face of a jury verdict finding facts under which he could be required to serve no more than 78 months," but upholding the sentence because *Booker* did not sever 18 U.S.C. § 3661, which states that, during sentencing, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. .".[2]

---

acquitted conduct when declining to make a downward departure, stating: "Whether or not *Watts* fully survives *Booker*, Judge Gershon's finding that Williams acted deliberately, by itself, provides no basis for disturbing the sentence." *Id.* at 454.

[2] Although the statement about the defendant's perception of his sentence is made in passing by the court in *Magallanez*, it should be noted that consideration of acquitted conduct has a deleterious effect on the public's view of the criminal justice system. A layperson would undoubtedly be revolted by the idea that, for example, a "person's sentence for crimes of which he has been convicted may be multiplied fourfold by taking into account conduct of which he has been acquitted." *United States v. Frias*, 39 F.3d 391, 393 (2d Cir. 1994) (Oakes, J., concurring).

As a separate policy matter the jury's central role in the criminal justice system is better served by respecting the jury's findings with regard to authorized *and* unauthorized conduct. To consider unauthorized conduct would be to denigrate wholly the right to a jury trial, which is a "fundamental reservation of power in our constitutional structure." *Blakely*, 124 S.Ct. at 2539, 2540 (describing the Sixth Amendment as "not a limitation on judicial power, but a reservation of jury power"); *Apprendi*, 530 U.S. at 479-80 n.5 (recognizing the power of juries, from eighteenth century England through the present, to thwart the prosecution by, *e.g.*, finding guilt of lesser included offenses or acquitting if the jury found the punishment associated with the offense "disproportionate to the seriousness of the conduct of the particular defendant"); *see generally Pimental*, 2005 WL 958245, at 7 (rejecting *Watts* and finding, in light of the Supreme Court's jurisprudence, that "to consider acquitted conduct trivializes 'legal guilt' or 'legal innocence' – which is what a jury decides – in a way that is inconsistent with the tenor of recent case law[,]" which, "after *Apprendi*, [focused] on whether a given sentence exceeded what the jury verdict [or plea] authorized").

In this case, the jury exercised its power and, after several days of

---

As Judge Oakes opined, "[t]his is jurisprudence reminiscent of Alice in Wonderland . . . As the Queen of Hearts might say, "Acquittal first, sentence afterwards." *Id.  See also* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines:  Unacceptable Limits on The Discretion of Sentencers*, 101 Yale L.J. 1681, 1714 (1992) ("most lawyers, as well as ordinary citizens unfamiliar with the daily procedures of criminal law administration, are astonished to learn that a person in this society may be sentenced to prison on the

deliberation, found Defendant not guilty of five counts of fraud and conversion. *See Watts*, 519 U.S. at 169-170 (Stevens, J., dissenting) (finding "[t]he notion that a charge that cannot be sustained by proof beyond a reasonable doubt may give rise to the same punishment as if it had been so proved is repugnant to . . . "longstanding procedural requirements enshrined in our constitutional jurisprudence"); *see Pimental*, 2005 WL 958245, at 7 ("The facts that the government sought to have me consider are not facts enhancing the crime of conviction, like the presence of a gun or the vulnerability of the victim. Rather, they are facts comprising different crimes, each in a different count."). Moreover, to enhancement pursuant to 2B1.1 (b) (1) (C) would not only affect Defendants' liberty by lengthening the sentences imposed, but the legal innocence associated with acquittal would be summarily eviscerated.

Additionally, consideration of acquitted conduct skews the criminal justice system's power differential too much in the prosecution's favor. The government, "having failed to meet its burden of proof at trial, is permitted a second bite at the apple, a chance to make its case before an alternative decision-maker, the sentencing judge." Barry L. Johnson, *If at First You Don't Succeed – Abolishing the Use of Acquitted Conduct In Guidelines Sentencing*, 75 N.C.L. Rev. 153, 182-183 (1996) (hereinafter "*If at First You Don't Succeed*"). This "second bite at the apple" allows the government to perfect its case and ready it for re-litigation at the

---

basis of conduct of which a jury has acquitted him, or on the basis of charges that did

sentencing "mini-trial." *Id.*

Indeed, this is the exact outcome that should not be allowed in this case. To find otherwise would amount to an "unreasonable sentence."

**Advisory Offense Level Computations**

**Paragraph 27:**

Defendant objects to any allegation that he was responsible for any losses in this matter. See argument *supra.* The Defendant **never** made any of the 62 HMSA claims for benefits Lynn Flaming did. Nor is he responsible for any relocation **losses** as he legally shipped his goods.

**Paragraph 39:**

As argued above the § 2B1.1 (b) (1) (C) enhancement is not applicable in this case, therefore paragraph 39 should be amended accordingly.

**Paragraph 43:**

The adjusted offense level subtotal should be **6**.

**Paragraphs 45 and 47:**

The total offense level is **6**.

**PART D. SENTENCING OPTIONS**

**Paragraph 68:**

The advisory guideline provisions based upon a total offense level of 6 should be guideline range of imprisonment of **0-6** months.[3]

---

not result in conviction.").

[3] The DRIR at ¶ 68 indicates a total offense level of 12 but that number appears to be a typographical error as ¶ 47 of the DPIR notes a total offense level of 10.

**Paragraphs 69 and 74:**

The advisory guideline provisions based upon a guideline range of imprisonment of **0-6** months places Defendant in Zone A therefore a sentence of imprisonment is not required.

**Paragraph 76:**

The advisory guideline fine range based upon a total offense level of 6 should be $500.00 to $5,000.00.

**Paragraph 78 and 79:**

A restitution order in this matter is inappropriate. See arguments *supra.*

Dated: Honolulu, Hawaii, January 13, 2006.

Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON
Attorney for Defendant
PETER GADDY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00589 ACK |
| | ) | |
| Plaintiff, | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| vs. | ) | |
| | ) | |
| PETER J. GADDY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant PETER GADDY'S Sentencing Statement was duly served upon the following parties listed below, in the manner described thereto, at their last-known addresses on the date of filing.

| | By U.S. Mail | By Hand Delivery |
|---|---|---|
| **WILLIAM SHIPLEY, ESQ.**<br>Assistant U. S. Attorney<br>Room 6-100, PJKK Federal Building<br>300 Ala Moana Boulevard<br>Box 50183<br>Honolulu, Hawaii 96850<br>(Attorney for Plaintiff UNITED STATES OF AMERICA) | | X |
| **ANNE M. SHIMOKAWA**<br>U.S. Probation Officer<br>UNITED STATES Probation Office<br>PJKK Federal Building<br>300 Ala Moana Boulevard, 1st Floor<br>Honolulu, Hawaii 96850-6100<br>(*United States* Probation Officer) | | X |

12

DATED:  Honolulu, Hawaii, January 13, 2006.

Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON
Attorney for Defendant